GEORGE H. BEINBRINK AND FANNIE E. SCHULTZ

*vs.*

MARY E. FOX.

*Fiduciary relations*: aged parent and child; undue influence;
consideration; burden of proof.  Married women:
power to convey land.  Acts of
1898, Chapter 457.

Where an aged parent makes a conveyance to a child, the
burden is cast on the grantee of establishing the fairness of the
transaction, and if where confidence is reposed, it is abused,
courts of equity will grant relief.                        p. 104

A conveyance made by an aged parent to a daughter was
attacked on the ground of undue influence and' absence of con-
sideration: *Held,* that upon careful consideration of the testi-
mony there was no evidence of any undue influence attributable
to the actions of the grantee, and that the consideration named
in the deed was a valid one.            .                  p. 110

Under Chapter 457 of the Acts of 1898, a married woman has
the same power to dispose of her property as that enjoyed by a
married man (provided she be 18 years of age) ; and the limita-
tion of her capacity to convey without the joinder of her hus-
band is removed, subject, however, to his rights which he has
acquired by virtue of the marital relation.        pp. 112, 113

*Decided June 24th, 1913.*

Appeal from the Circuit Court for Frederick County in Equity (PETER and MOTTER, JJ.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Alban M. Wood* and *Charles Herzog,* for the appellant.

*Leo Weinberg* (with whom was *Frank L. Stokes* on the brief), for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

The bill in this cause was filed by Barbara E. Beinbrink June 5th, 1906, against Mary E. Fox, her daughter, for the purpose of having set aside a deed for a tract of farm land in Frederick county made September 3rd, 1903, by the complainant to her daughter.

The bill alleges that when the complainant was about seventy-six years of age, and physically and mentally weak, she was induced by fraud and undue influence, practised upon her by her daughter, to convey all of her real property; that although the deed recites that a consideration of twenty-nine hundred dollars passed, in fact the consideration named was false and that none whatever passed.

During the taking of testimony before the examiner, and after the complainant had testified, she died, and George H. Beinbrink, the husband of the complainant, and Fannie E. Schultz, her only other child and half sister to the defendant, were substituted as parties plaintiff, they being the sole devisees and legatees under the last will and testament of Barbara E. Beinbrink, executed June, 1907.

The Court below passed an order dismissing the bill, and from that order this appeal was taken.

It is firmly established as the law of this State, that where an aged parent makes a conveyance to a child, the burden is cast upon the grantee of establishing the fairness of the transaction. And if where confidence is reposed it is abused, Courts of equity will grant relief. *Highberger* v. *Stiffler,* 21 Md. 352; *Todd* v. *Grove,* 33 Md. 188; *Whitridge* v. *Whitridge,* 76 Md. 54; *Zimmerman* v. *Bitner,* 79 Md. 115; *Berger* v. *Bullock,* 85 Md. 441; *Reck* v. *Reck,* 110 Md. 497.

There is no contention that, at the time of the execution of the deed, Mrs. Beinbrink was mentally incapable of making a valid contract, and her mentality is not questioned except in so far as the exercise of the alleged undue influence might be said to question it. Therefore the only questions involved concern undue influence by the daughter over the aged mother, and the consideration named in the deed.

After a careful reading and study of all the testimony in the record we have reached the conclusion that there is no evidence of any undue influence attributable to the actions of the appellee, and that the consideration named in the deed is a valid one.

Mrs. Beinbrink and George H. Beinbrink, her husband, lived on the land in question, several miles out of Frederick. Mrs. Fox, with her children, lived in Frederick, and Mrs. Schultz lived in Baltimore City. Mr. Beinbrink was the stepfather of both Mrs. Fox and Mrs. Schultz. The father of Mrs. Fox was a previous husband of Mrs. Beinbrink, named Charles Faitz, who had died when Mrs. Fox was two years of age, and Mrs. Schultz four. Faitz was not, however, the father of Mrs. Schultz. Mr. Beinbrink did not know Mrs. Beinbrink until two years after the death of her husband, whom he did not know at all.

The deed was executed without the knowledge of Mr. Beinbrink and the first knowledge he had of it was a few days after its execution when he read of it in the county

newspaper's account of land title transfers. This suit was not instituted until three years later, and it was a year later before Mrs. Beinbrink testified. She was then about eighty years of age and from a reading of her testimony we are compelled to agree with the lower Court that no probative force can be allowed it. From the disconnectedness of her answers, uncertainty on material points and avowed forgetfulness there is the clearest evidence of that breaking down of mentality so often seen in persons of her age. And we think injustice would be done if we allowed any of her testimony to influence us in the determination of this case.

Mrs. Fox, the appellee, testified that she was fifty-eight years of age and was married when she was twenty and lived with her mother a while afterward. Since then she had made her home apart from her, though she visited her mother, and her mother her, until shortly after the execution of the deed was known to her step-father who had turned her mother against her. Her mother for years had told her that she had gotten about fifteen or sixteen hundred dollars out of her father's estate, including sale of a house, insurance and lodge money. Her mother had said she wanted some time to give her eight or nine hundred dollars as her share of the property, and interest from the time of her father's death. "She always wanted to make me a deed for what she possessed, and I was always opposed to it, and when she would worry over it I would say just give me some writing to show what you owe me, and if you have anything left when you come to die I am satisfied to take what is left, if it is only half of what you owe me. I never asked her to make me a deed." The first time she mentioned making a deed to her was about fifteen years ago. On the day of the execution of the deed her mother came to her house in Frederick and asked her to go to the office of Frank L. Stoner, a member of the bar who had prepared the deed. She was present at its execution and "heard Mr. Stoner ask her whether she understood now what she was

doing, and he wanted to know if she understood him aright. He said to mother, do you understand, I understood that I was to write this deed for the amount of money that you had me to add up in your will that you owed your daughter, and I heard her when she said to Mr. Stoner, that is right and that is what I wanted her to have the deed for, for the amount of money I owed her from her father. * * * He explained everything to her just as plain as he could, and she understood it all, at least, she said she did." That she had arranged with her mother that she should "live on and get her living" off the farm for the balance of her life, and that she had never attempted to disturb her after the execution of the deed.

The testimony of Mrs. Elizabeth Speck corroborates Mrs. Fox as to the intention of Mrs. Beinbrink to make a deed to Mrs. Fox. She testified that she was a friend of Mrs. Beinbrink and about twelve years before, Mrs. Beinbrink had told her "That this money belonged to Mr. Faitz, the father of Mrs. Fox, and she told me she wanted to give the home place over to her daughter, Mrs. Fox, and Mrs. Fox wouldn't let her do it. * * * She said it was eight hundred dollars."

Ella V. Shafer testified that Mrs. Beinbrink had on three or four occasions told her she wanted to pay Mrs. Fox the money that was due her from her father and which she had spent, and that the only way she could do it would be by deeding her the farm. That since the making of the deed she had told her once that she had often wanted Mrs. Fox to go with her and have it done, and now that it was done she was satisfied.

Mrs. Anna Boone testified: "I don't remember how long ago it was, but it was in the neighborhood of four or five years ago. It was in her own kitchen. I went there one morning and she (Mrs. Beinbrink) was crying, and I asked her what was the matter, and she said Mr. Beinbrink was treating her so badly. And I asked her the cause, and she

said he had been treating her so bad since she had made this deed to Mrs. Fox. I asked her what was the idea of her making the deed to Mrs. Fox, and she told me she had made a will, that she wasn't satisfied because when she was gone Mr. Beinbrink and Mrs. Schultz would beat Mrs. Fox out of what was coming to her, that she had made the deed to Mrs. Fox so that she would be righted in her lifetime, that it was due her from her father. She said, too, that she did not expect Mr. Beinbrink to find out that she had made the deed, but that he did find it out and treated her bad. She said, too, she would rather die than appear against Mrs. Fox at the Court House. Mrs. Fox had been so good to her. She told me, too, that she never would have appeared against Mrs. Fox if she had not been forced into it. She said the money coming to Mrs. Fox, interest and all, was in the neighborhood of twenty-nine hundred dollars." She also testified that she had talked to Mrs. Beinbrink at different times about this deed and she always told her about the same thing.

Mrs. Ada Knock, a daughter of the appellee, testified that practically every time Mrs. Beinbrink came to her mother's house she would beg her mother to let her make a deed so that she would get her father's money. Mrs. Beinbrink brought the will, in which she had left her daughter twenty-nine hundred dollars, to her house for her to read and left it in charge of her (Mrs. Knock) husband until she decided to change the provision in it by a deed.

Mrs. Mary L. Secrist testified that in the fall of 1903 Mrs. Beinbrink had told her "she had made a will in Mrs. Fox's favor and she thought Mr. Beinbrink and Mrs. Schultz would cheat her out of it. And she said she had made a deed of the property to Mrs. Fox and I am now satisfied Emily will get what we spent of her's. Mr. Secrist then asked her did she understand what she was doing when she deeded her property to Mrs. Fox, and she said, it is the way I want it."

William T. Secrist, in testifying as to the conversation just referred to, said: "She (Mrs. Beinbrink) was telling my wife about the trouble she had with Mr. Beinbrink and Mrs. Schultz, and the manner in which they treated her, and in that conversation she came to the will and deed. When she said she had made a deed to Mrs. Fox, I asked her, I says, Mrs. Beinbrink, do you know what you have done when you deed your property to Mrs. Fox? She said she did. She was satisfied and that was the way she wanted it. She was afraid Mr. Beinbrink and Mrs. Schultz would cheat Mrs. Fox out of it after she was dead. She wanted Emily (Mrs. Fox) to have what was due her by her father. In this way she knew she would get it."

The appellee filed as an exhibit a will made by Mrs. Beinbrink, May 8th, 1901, in which she provided that if her husband survived her he should have such portion of her estate as the laws of Maryland allows, and provided for Mrs. Fox as follows: "Of the residue I will, devise and bequeath to my daughter, Mary E. Fox, the sum of twenty-nine hundred dollars, this sum being the amount of money with interest to this date, to which my daughter, Mary E. Fox, was entitled, from the estate of her father, Charles Faitz, late of Baltimore City, deceased, which said sum, so due to my said daughter from said estate, was retained by me and never paid to my said daughter. The provisions of this will were confirmed by a codicil dated May 25th, 1903.

Frank L. Stoner testified that he wrote the above will and codicil, that he was present when Mrs. Beinbrink signed both, that he was an attesting witness to both. In answer to "What knowledge, if any, have you as to the provision in the will giving Mary E. Fox $2,900.00?" said: "Mrs. Barbara E. Beinbrink, when she asked me to prepare this will, stated that she wanted to protect her daughter, Mary E. Fox, to the extent of the estate or money left by her first husband, the father of Mary E. Fox. She named to me the amount of money to which Mary E. Fox was entitled from her

father, which she claimed to have received and made use of, and asked me to calculate the interest on the amount she named, which I accordingy did, and my present recollection is that the sum named, with interest, aggregated a fraction over $2,900. Mrs. Beinbrink accepted $2,900 as the amount she would give her daughter by the will and so instructed me to prepare it."

George H. Beinbrink, one of the appellants, testified that he married Mrs. Beinbrink in 1853, about two and a half years after the death of her first husband; that he never knew her first husband; that when he married her she had no property or money; that his wife never owed Mrs. Fox a dollar that he knew of and that to his personal knowledge the $2,900 consideration mentioned in the deed was false. On cross-examination he testified that he did not have any knowledge whatever as to the financial condition of Mr. Faitz at the time of his death. "He might have left a hundred thousand dollars for all I know. I never knowed nothing. I didn't know the people." That his wife never discussed with him Mr. Faitz estate; at the time of his marriage there was a house left, which he supposed belonged to her first husband, which was sold, and the proceeds, so far as he knew, applied to the payment of debts; that all his wife had when she married him was some house furniture, and that she never told him she owed Mrs. Fox anything. He further testified that Mrs. Fox "was pretty rough towards her mother all the time" before the deed was written." That after the execution of the deed Mrs. Fox had come to their home and he had cursed her and hurled a piece of stove wood at her and ordered her never to come back.

Mrs. Fannie E. Schultz testified that at the time of her mother's marriage to Beinbrink she had no property; that the property in question was the result of the work and accumulation of her mother and step-father; that her mother had been contributing to the support of Mrs. Fox and her family for forty years. On the point of the influence Mrs.

Fox had over her mother she testified as follows: "She certainly did have a powerful influence over mother, she gained it by pity, she would plead her poverty, that I would get more than she would, and that I had more than she had, or that I was doing better than she was doing. She worked on mother's feelings in that way." She further testified that she and Mrs. Fox had been on bad terms for fifteen or twenty years.

There were filed certified copies of the inventory and first and second administration accounts of the personal estate of Charles Faitz, from which it appears that after the payment of debts and expenses there remained a balance of $113.86, which amount was paid to the widow.

We have set out the testimony as fully as the length of this opinion would warrant in an endeavor to bring out the important features of it. Our conclusion therefrom is that this deed was the voluntary conscious and deliberate act of Mrs. Beinbrink for a valid consideration. The fact is clearly proved from the statements of Mrs. Beinbrink that she was possessed of a sum of money that rightfully belonged to her daughter. These statements made throughout such a long period of time and to such a number of people surely indicate that she had in some way, known to herself, received money from the estate of Mrs. Fox's father, which she knew belonged partly to the daughter. It is impossible to account for these statements on any other theory than their truth. Leaving out of consideration entirely the testimony of Mrs. Fox and her daughter, Mrs. Knock, on the ground that it might be colored by interest, though we do not say so, we still have the testimony of Mrs. Speck, who states that as long as 12 years ago Mrs. Beinbrink had told her that she had received $800 which belonged to Mrs. Fox from her father's estate, and on down to the date of the execution of the deed, and afterwards, five disinterested witnesses testified to the same fact. And in addition three years before the execution of the deed Mrs. Beinbrink had a statement of

this very fact incorporated in her will. To admit that these statements were a result of any influence Mrs. Fox may have had over her mother, would be, from the facts in this case, the wildest speculation. That her act was deliberate is fully shown by the testimony of the same witnesses, and the only doubt she seems to have had was as to the safest way to secure to the daughter what was rightfully hers. This is evidenced by the fact that after she had determined upon the plan of a will she afterwards changed it to the deed, so that, as Mrs. Boone testified Mrs. Beinbrink told her, Mrs. Fox would be "righted" in her lifetime, fearing that if she relied upon the will her husband and Mrs. Schultz would cheat her out of it. That her fears were justified, seem to be borne out by these proceedings when we consider that Mrs. Schultz immediately consulted a lawyer and Mr. Beinbrink drove Mrs. Fox from her mother's home. It is significant, too, that notwithstanding their actions three years elapsed before Mrs. Beinbrink filed this bill, and that when she was called as a witness her mind was apparently that of a child.

The point is made by the appellants that the deed in question is void by reason of the non-joinder of the husband. Their contention is, that the property having been acquired prior to the passage of Ch. 457 of the Acts of 1898, and at a time when it was not possible for a married woman to convey her property without the joinder of her husband, the only mode by which a valid conveyance could be made was by following the law existing at the time of the acquisition of the property, notwithstanding the Act of 1898 gave a married woman the right to convey without her husband. The cases of *Gebb* v. *Rose,* 40 Md. 392; *Greenholtz* v. *Haeffer,* 53 Md. 186, and *Preston* v. *Fryer,* 38 Md. 225, are cited as being to that effect. A reference to those cases shows, that they did not establish such a principle as contended for, but merely declared void deeds made by married women without the joinder of the husband, because the statute in effect at the time of the attempted conveyance provided that a married

woman could only convey her separate property by her husband joining in the deed. By the Code of 1860, Art. 45, sec. 2, the control of married women over property was very much enlarged; and it was therein provided that all property acquired by a woman either before or after her marriage by "purchase, gift, grant, devise, bequest, descent or in course of distribution," should be held for her separate use, with power to her of devising it as fully as if she were a *feme sole;* or of conveying the same by a joint deed with her husband. It was provided if she died intestate, her husband surviving her with children, he was to have a life estate in all of her property, but if the husband survived her without children he was to have a life estate in the realty, but the personalty absolutely. This Court has declared that this Act, and some amendments which are not material to the present inquiry, have removed every common law disability, to which a *feme covert* was formerly subjected, with respect to making a valid will. That under it she could exclude her husband entirely from any share in her property. *Roane* v. *Hollingshead,* 76 Md. 369. This practically destroyed in Maryland the husband's estate by the curtsey in lands held by his wife under those provisions of the Code, and substituted a life estate in her inheritable real estate in her husband, conditioned upon his surviving her and her dying intestate. *Mason* v. *Johnson,* 47 Md. 347. Up and until the date when the Act of 1898 went into effect, January 1st, 1889, the only limitation upon a married woman's power over her property was this necessity of her husband joining in the deed of conveyance. The Act of 1898 removed this limitation and gave to a married woman the same power to dispose of her property as that possessed by her husband over his property, provided she is eighteen years of age.

The effect of this statute as to its retroactive operation upon property held prior to its adoption, has been passed upon in *Harris* v. *Whiteley,* 98 Md. 430. In that case judgment creditors of the husband claimed that under sec. 7,

Art. 45 of the Code, being the Act of 1898, the husband acquired a vested estate for life in one-third of the estate of his wife, acquired prior to the passage of the Act, and that this was applicable to their judgments in the lifetime of the wife. The question was, did the Act operate to change the expectant interest that the husband took by virtue of his marriage in 1881, under the laws then in force, into a present vested estate. The Court held that the Act had no retroactive effect and that the rights of the husband and wife were not affected by it and that they must be determined according to the pre-existing law. That was a case where the result would have been, if the creditors' contention had been upheld, of diminishing the vested interest the wife had in her property and increasing the husband's interest from a mere expectancy and not a vested estate, to a present and vested one. Applying this principle to the present case, it must be that the Legislature, when it gave to marreid women the same power to dispose of their property as that enjoyed by married men, meant to remove the limitation on the capacity of the wife to convey without her husband, but subject to any rights he had acquired by reason of the marital relation. If the wife takes property the title to which is subject to the limitation to convey imposed by a statute, a conveyance by her alone pursuant to a later statute does not make her conveyance void, but merely subjects it to the conditions in effect during the existence of the prior statute.

*Order affirmed, with costs to the appellee.*