# CIRCUIT COURT OF BALTIMORE CITY.

Filed January 6, 1914.

LAURA MARSHALL
VS.
ABRAHAM LETVIN.

*William A. Wheatley* for plaintiff.
*Jacob J. H. Mitnick* for defendant.

304

BOND, J. —

The defendant resists specific performance of his contract of purchase upon the ground that the plaintiff cannot give a good, marketable title. And the defects averred are three. First, it is objected that a survey of the lot described in the deed under which plaintiff acquired title shows that the house built on it extends on one side a few inches over on the neighboring lot, and that the house adjoining on the other side overlaps this lot. If the survey of the plaintiff is correct there would seem to be a slight error in the laying out of all the lots in the block, measuring from the assumed point of beginning. The discrepancy is small, is disputed by competent surveyors, and for more than 20 years this house and others in the block have stood where they now are. Without further discussion, I find no sufficient ground in this for withholding the relief prayed.

Again, it is urged that at the time of the acquisition of title by the plaintiff, in 1893, the law provided that a wife might convey such property only with the concurrence of her husband; that this provision of the law has continued applicable to the property notwithstanding the provisions of the later Act of 1898, Ch. 457; and that the plaintiff here has not secured the joinder of her husband in the contract of sale and cannot have it in a conveyance. But the decision in the recent case of Beinbrink vs. Fox, 121 Md. 102 (Advanced Sheets), disposes of this contention. The Court of Appeals has there held that this requirement of the older law was repealed as to such property by the Act of 1898.

The third and main ground of defense, and apparently the main cause of the defendant's refusal to complete the purchase, has arisen from a warning statement by the plaintiff's husband that this property, although conveyed to the wife alone, was bought with his money and that he thus has an interest in it. And there was an intimation that the claim would be pressed sometime in the future. This seems to me to be the full effect of the warning and the statement of facts upon which it was based. And the defendant now submits that in this situation the title is doubtful and unmarketable, or that, at least, the threat of an adverse claim so encumbers it that the court should not require him to complete his purchase.

It is true that courts have many times said that equity will not enforce the purchase of a law suit, and the like. But it is just as clearly true that these expressions were never intended as full, accurate definitions of a legal rule. Discussions in this branch of the law, indeed, seem to abound in general expressions which need limits, and which can be understood and properly applied only when approached with a previous understanding of the principles upon which equity proceeds. More exactly stated, those principles seem to be these. A mere threat by a third person of an adverse claim, even if that threat be carried to the extent of filing suit, will not alone be sufficient to prevent the relief of specific performance.

Owings vs. Baldwin, 8 Gill 337, 354-355.

Gill vs. Wells, 59 Md. 492, 495.

Levy vs. Iroquois Co., 80 Md. 300.

"It is not a conclusive objection to the title that a third party has filed a bill against the seller, claiming a right to the estate, but the nature of the adverse claim will be examined into."

2 Sugden on Vendors, 124, quoted 8 Gill 355.

Green vs. Pulsford, 2 Beav. 70.

To prevent the relief by reason of doubt or unmarketability of the title there must be something in the condition of the title, as evidenced by the documents or by other facts, which gives rise to a reasonable possibility

of controversy. And it is with these facts of the title, not with unjustified threats or suits, that the court must concern itself to determine whether the title is so clear that a purchaser should be made to accept it under his contract.

Now there is nothing stated by the husband here, or by his counsel, which of itself shows any defect in the wife's title. There is no suggestion of an instrument in writing creating an express trust in the husband's favor, and under the Statute of Frauds, Section 7, an express or conventional trust not evidenced by some writing is void. There is, therefore, no apparent possibility of an express trust to qualify or derogate from the plaintiff's title.

Green vs. Drummond, 31 Md. 71.

And it seems to have been assumed by the husband that payment of the purchase money by him would, merely by implication and operation of law, give him some title. Payment of the purchase money by a third person who is a stranger to the grantee in the conveyance, does give rise to an implied or resulting trust in that third person's favor. But there is no such implication merely from the fact of payment by a husband for property conveyed to his wife. On the contrary, it is presumed that there was a gift of the money or property to her.

Mutual Ins. Co. vs. Deale, 18 Md. 26.

Graff vs. Rohrer, 35 Md. 327.

Johnson vs. Johnson, 96 Md. 144.

This presumption of a gift is one of fact only, and is rebuttable. If, therefore, the husband is able to show that he did pay the purchase money, and then further, without relying on an express trust, can show that a gift to the wife was not intended, he may establish a trust in his favor, which a court will enforce, assuming that the property was not put in the wife's name for an unlawful purpose.

The possibility that there may be such a resulting trust, and that a husband may be able to prove all these essentials, is one which confronts every purchaser from a married woman. But this mere possibility need not be cleared away to enable the wife to convey, or to compel specific performance of a contract to purchase. It need be recognized only when facts brought forward make it seem a possibility reasonably to be feared. And a mere un-

supported threat of a claim of a resulting trust will not be considered by the court as casting doubt upon the record title. Such is the rule of the Maryland decisions already cited; and it is the general rule.

In the often-cited case of Green vs. Pulsford, 2 Beav. 70, the vendor held by appointment under a marriage settlement, and certain possible beneficiaries under the power of appointment, warned the purchaser, before the consummation of a sale, that the appointment had been made in fraud of the settlement. The Master of Rolls said: "There was not as I recollect, one single fact stated, but a mere bare allegation was made, that the appointment was in fraud of the settlement; there was no more than the statement of that possibility which everybody upon looking at the transaction, must be aware must have existed. * * * There was nothing to show that Mr. Mabanke or Mr. Pulsford had not a good title, but the simple allegation of this party, that what was done was a fraud upon the settlement. I cannot say that I think this of itself is a reason why the state of things which existed immediately before that notice should be considered so far altered as to entitle the plaintiff to say that the title is not a good title and that the agreement ought not to be specifically performed."

Now, are the facts in this case sufficient to enable the court to find that there is doubt upon the title, or that it is not merchantable, within the rule stated? The husband has said that he paid the purchase money, and while the wife denies this there is some conflict in her testimony. Notice of this fact alone, however, if it is a fact, is not notice of a resulting trust. A resulting trust does not follow. And a claim of a resulting trust based upon this fact alone would be on its face not well founded and would cast doubt upon the title. Indeed, if the husband should resort to equity to enforce an interest in the property, and should in his bill of complaint state all that he has stated to the defendant, the bill would clearly, I think, be dismissed upon demurrer.

Would, then, notice of these insufficient grounds, taken in connection with the possibility of the husband's being able to prove a better case, not now disclosed, cast reasonable doubt upon

the title? Does the possible payment by him, of which there is some evidence, coupled with the unsupported possibility of his proving a resulting trust by evidence beyond this, cast such a doubt? After reading such decisions as I can find based on facts somewhat similar my conclusion is that it does not, and that for the purposes of this case the title must be treated as unclouded.

Green vs. Pulsford, 2 Beav. 70.

Aldrich vs. Bailey, 132 N. Y. 85.

Schermerhorn vs. Niblo, 2 Bosworth (N. Y.) 161.

Cambrelung vs. Purton, 125 N. Y. 610.

Batt vs. Mallon, 151 Mass. 477.

The wife here has testified, denying the possibility of a resulting trust for the husband and giving a detailed explanation of the purpose of the payment by him to her of the money now alleged to have been the purchase money. The husband was not called as a witness; but his counsel, Mr. Hannibal, who had the husband's interests in charge and made the claim on his behalf, was called by the defendant, and testified, in effect, that the claim was based merely on the fact of contribution by the husband to the purchase money. And in addition we have the important fact that the property was actually conveyed to the wife alone with the full knowledge and acquiescence of the husband, and has remained in her name for over 20 years.

The court has not only to consider the interests of adverse claimants in its rules upon this subject. The record owners must also be safeguarded in their rights, especially against claims which may be merely vexatious and spiteful. In this case it appears that the husband and wife have just come through a hard-fought suit for divorce, and unusual bitterness exists between them. Consequently the making of the adverse claim merely out of bitterness, and for the purpose of obstruction, is a possibility to be borne in mind. The husband has not yet taken any action to enforce the alleged resulting trust, and this fact argues against the sincerity of his claim.

As to the security of the purchaser against the claim of the husband, if there should be found proof sufficient to sustain it, I take it that if the facts of which notice has been given are not sufficient to cast a doubt upon the title, they are not sufficient to give the purchaser such notice of the resulting trust as will bind the property in his hands. A resulting trust does not attach to property in the hands of a bona fide purchaser without notice.

2 Perry on Trusts, Sec. 815c.

A decree will be signed granting the relief prayed.