FLORENCE K. BALLINGER, complainant,

*v.*

RETA O. BARTOLETT et al., defendants.

[Decided January 19th, 1925.]

Conveyances—Petition to Set Aside—Alleged Sale to a Step-daughter at a Price Below Value to Injury of Heirs—No Direct Evidence of Conspiracy or Fraud—Complainant in Laches—Property Brought About Its Value.

On final hearing.

*Mr. Abe J. David,* for the complainant.

*Mr. Welcome W. Bender,* for the defendants.

BUCHANAN, V. C.

Mary E. Ireland died in 1910, seized of a dwelling-house, 449 Morris avenue, Elizabeth. By her will, after payment of debts and a contingent bequest of $500, she left her residuary estate (which so far as appears comprised nothing but the dwelling) to her husband, James H. Ireland, for life, plus an added power of using so much of the principal "as may be necessary to comfortably sustain him under his present standard of living," with remainder at his death to her children. (There were two children, complainant and a brother, who died intestate shortly afterwards.) The husband was also named executor and given a blanket power of sale in usual form.

In 1912 he remarried, acquiring thereby a step-daughter, the defendant, Reta Bartolett, to whom in 1917 he conveyed the dwelling for $5,800, out of which he paid off mortgage encumbrances of $4,500 and accrued interest and taxes of about $500.

He never filed an account as executor until 1921, after being cited to do so by complainant. She filed exceptions to the account, *inter alia*, that the price obtained for the house was inadequate. These exceptions were not determined when Judge Pierce's term expired, and they still remain undetermined.

James H. Ireland died in August, 1924, and the present bill was filed the next month. It seeks to have the deed set aside or a reconveyance. The contention of complainant is that the price was inadequate, that it was not necessary for Ireland to sell it in order to sustain himself according to his previous standard of living, and that defendant is either an actual party to a scheme to defraud complainant, or a purchaser with notice of a breach of trust.

There is no direct evidence of conspiracy. There are some suspicious circumstances, and the defendant was by no means entirely frank in her testimony. The burden of proof, however, is on complainant, and the proofs are insufficient to establish conspiracy, intentional fraud or undue influence.

Upon the question of values, I am satisfied that the present value of the property is about $10,500 to $11,000. The opinions of complainant's and defendants' experts are in fairly close accord as to this, although one of defendants' experts places the value as high as $12,500. The figures of complainant's experts as to the value at the time of sale in November, 1917, are $8,500, $9,500 and $11,000. The $9,500 is by the man who places the present value at $12,500; the $11,000 by the same man, who places present value at $11,000, which, of course, cannot be credited. By the great weight of evidence, as well as by common knowledge, there has been considerable increase in real estate values since 1917, a large factor therein being the great decrease in the purchasing power of the dollar. Moreover, it appears that defendant has spent over $3,000 in repairs and improvements since the conveyance, of which, at least, $1,500 or $2,000 would figure in the present increased value of the house. Defendants' experts place the 1917 value at $6,000 to $6,250. Defendant testifies that the house was in very

bad repair in 1917, with extremely dilapidated roof and consequent general destruction of interior papering, plastering, and the like. This is not contradicted by complainant. All the experts agreed that the market for real estate was extremely inactive in 1917. Defendant testifies that Mr. Ireland sold because the second mortgage had been called in, and his efforts to replace it or pay it off had been futile, and that he had made efforts to sell to others in vain. This, also, is not contradicted.

On the whole, I am inclined to the view that on all the evidence the property was sold for about as much as it was possible to get for it at that time. It might well be that Mr. Ireland would be chargeable with the loss occasioned by his permitting the property to get into such disrepair, and permitting arrears of taxes and interest to accrue, and the consequent loss by reason of practically forced sale. That, however, is not the present issue; and defendant further testified that Ireland had had some negotiations with complainant as to the situation prior to making the sale. Complainant did not deny this.

In the circumstances as they existed at the time of sale, I cannot see but that Ireland did what was best for the estate. to save what he could rather than lose all in a foreclosure sale. He had an absolute power to sell under the will, and while, of course, it would be a breach of trust to exercise that power other than for the interests of the estate (except as permitted by the provisions of the will in his own behalf), it does not seem that he committed a breach of trust by such sale at that time, whatever may have been his fault prior thereto.

I think it must also be noted that complainant is in laches, and that this is material in the determination of the cause. She says she did not know that the sale had been made until two or three years after the fact, which would be in 1919 or 1920, and did not know the price until the account was filed in 1921. She had full knowledge of all the facts, however, in May or June, 1921, yet waited until after her father's death in August, 1924, before filing her bill. The loss of the

Court of Chancery—Ballinger v. Bartolett

father's testimony, as well as evidence that he alone probably would have had knowledge of, was thus occasioned to defendant.

I have already spoken of defendant's lack of frankness. That is too mild a characterization of some of her testimony, such as, for instance, her statement to the effect that at the time she bought the property she thought it of no value whatever, and considered every dollar put into the purchase as an absolute loss.

Because thereof the decree dismissing the bill will be without costs.