WILL GAGGERS, ET AL. *v.* FREDERICK THOMAS GIBSON, ET AL.

[No. 25, April Term, 1942.]

610

*Decided May 27, 1942.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*Eldridge Hood Young,* with whom were *William J. Rowan, S. Albert Mickler* and *Robert H. Hunter* on the brief, for the appellants.

*J. Dudley Digges,* with whom were *James H. Bowen* and *Sasscer & Digges* on the brief, for the appellees.

FORSYTHE, J., delivered the opinion of the Court.

On April 24, 1941, the appellees, Frederick Thomas Gibson, Bertha White and Estella Thomas, filed in the Circuit Court for Prince George's County a bill in which

they asked that a deed executed on April 27, 1940, by their father, William Thomas Gibson, to one of the appellants, Will Gaggers, (1) be declared void; (2) that the deed be declared a mortgage; and (3) for partition in kind, or a sale for partition. The defendants below, and appellants here, are Emma Hunt Gaggers, another daughter of the said William Thomas Gibson, and the said Will Gaggers.

The bill alleges the said deed was procured through fraud and misrepresentation, and the court, after hearing, passed a decree ordering the appellant Will Gaggers, after the payment to him of the sum of $157, to convey the property conveyed to him by the said deed of April 27, 1940, to the said appellees, and to Emma Hunt Gaggers; and in the event the said sum of $157 be not paid within thirty days, then the property should be sold and the proceeds thereof, after payment to the said Will Gaggers of the sum of $157, be divided equally among the appellees and Emma Hunt Gaggers. This appeal is from that decree.

The established facts are that William Thomas Gibson, at the date of the execution of the deed in question, was a respectable colored man, eighty-six years of age and very feeble, and had been so since about a year prior to the execution of the deed. The property conveyed according to the agreement of the parties was worth $5,500. It had been subject to a building association mortgage of $1,400, but by reason of monthly payments, $329.28 had been paid on the original mortgage. But by reason of delinquent interest and fines of $29.68, and the 1939 taxes of $93.38, and insurance of $18.75, plus interest thereon, the indebtedness to the building association amounted, at the date of the deed, to $1,213.55.

The building association had threatened to foreclose the mortgage unless Gibson could make the payment then necessary to clear the amount in arrears, and to furnish satisfactory assurance that the future monthly payments would be made. But when it appeared that the old man had no means with which to keep up the

future payments (the building association still threatening foreclosure), the daughter Emma, who was about to marry Gaggers, and then did so, conceived the idea of having Gaggers pay the amounts in default, and take a deed for the property. With that scheme Emma, assisted by the action of the building association in constantly threatening foreclosure, succeeded in having her father execute the deed whereby Gaggers, who was then her husband, secured a property in fee simple, worth, after deducting the then mortgage of $1,213.55, about $4,286. In other words, Gaggers received the entire property for less than one-quarter of its value.

The testimony shows clearly that Emma arranged the whole transaction and was the one who urged her father to execute the deed whereby she and her husband secured the entire property. Mr. Gott, of the building association, testified that on the day the old man went to his office with Emma, he told him he was placing himself absolutely in the hands of Gaggers, and "Mr. Gibson hesitated some time, and he did not say he would or would not (sign the deed), but Emma said to him, 'this is your only way out. It is your only salvation, because you cannot keep up the payments unless somebody will keep them up for you'."

While it is true the deed is to Gaggers alone, it was procured by his wife, and he is bound by her actions. "It is firmly established as the law of this State that where an aged parent makes a conveyance to a child, the burden is cast upon the grantee of establishing the fairness of the transaction. And, if where confidence is reposed it is abused, courts of equity will grant relief." *Beinbrink v. Fox*, 121 Md. 102, 104, 88 A. 106; *Bentley v. Bentley*, 141 Md. 428, 437, 119 A. 293; *Chase v. Grey*, 134 Md. 619, 625, 107 A. 537. Actual fraud, or undue influence, is not necessary in order to vacate the deed. *Highberger v. Stiffler*, 21 Md. 338, 350, 83 *Am. Dec.* 593; *Todd v. Grove*, 33 Md. 188. Advanced age, physical debility and mental feebleness are all facts carrying weight in determining whether a confidential relation in fact

existed. *Mead v. Gilbert,* 170 Md. 592, 185 A. 668; *Gerson v. Gerson,* 179 Md. 171, 20 A. 2d 567.

There is no denial of the fact that when he executed the deed Gibson was eighty-six years of age and his physical condition was very much reduced. He did not appear to be capable of serious mental effort. He hesitated, and was only persuaded to sign when Emma urged him by telling him it was the only way by which he could save his home. Emma had assumed control of her father's affairs, and he relied upon her, and her alone, when the threat of foreclosure was over him. She did not help him to secure independent and disinterested advice. The sole concern of the building association was to secure the payment of the small default, and have assurance that the monthly payment would be made. Having at least four times the amount of the mortgage as security, the association well could have advised, or assisted the old man, to make some other arrangement, but that was not done. The only arrangement suggested was one whereby the association still could retain the mortgage. The desire to do that seems to have been strong enough to induce the association to sit in on a transaction which certainly must have appeared to be one contrary to the intention of an aged and infirm man. Confidence clearly was reposed in Emma, and a fiduciary relation exists in every case "in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic, or merely personal." *Hensan v. Cooksey,* 237 Ill. 620, 86 N. E. 1107, 1109, 127 *Am. St. Rep.* 345, and cases there cited. "The existence of the confidential relation creates a presumption of influence which imposes upon the one receiving the benefit the burden of proving an absence of undue influence by showing that the party acted upon competent and independent advice of another, or such facts as will satisfy the court that the dealing * * * was had in the most perfect good faith on his part and was equitable and just between the parties." *Thomas v.*

*Whitney,* 186 Ill. 225, 57 N. E. 808; *Fish v. Fish,* 235 Ill. 396, 85 N. E. 662; *Curtis v. Curtis,* 85 W. Va. 37, 100 S. E. 856, 8 *A. L. R.* 1091; 16 *Am. Jur., Deeds,* p. 611, Sec. 393.

It is beyond doubt that William Thomas Gibson was influenced by his daughter Emma, one of the beneficiaries of the transaction. He had no advice from any source which would enable him to understand the full force and effect of his act. The representative of the building association explained only the effect, without suggesting any one of several other arrangements whereby the old man would not lose his entire property. It is reasonable to believe that such a small loan on property worth more than four times the amount of the loan, could be transferred to a straight loan whereby the interest and taxes only would have to be paid annually, or, a part of the property, it was made up of seventeen lots, sold for enough to pay the indebtedness, leaving the home clear for the old man. Also, all of the property, it seems possible, could have been sold for far more than the indebtedness, leaving a sum of money ample for the old man.

Under all the circumstances of this case, as disclosed by the evidence, and in accordance with the settled law in cases like this, we are convinced the transaction was unwarranted and unfair, and that a constructive fraud was perpetrated. In *Porter v. Nichols,* 128 Md. 695, 98 A. 671, it is stated that where property has been obtained from one by fraud, or other improper means, it is not only the duty, but it should be the pleasure of courts to rescue the property.

> *Decree affirmed. Appellants to pay the costs.*