## WILLOUGHBY *v.* TREVISONNO ET AL.

[No. 136, October Term, 1952.]

*Decided June 10, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Alex Steinhorn,* for appellant.

*Joseph Loeffler,* with whom were *Benjamin L. Berman* and *Harry E. Goertz,* on the brief, for appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order sustaining a demurrer and dismissing appellant's bill of complaint.

On October 8, 1952, the appellant, Theresa Willoughby, filed a bill of complaint in which she alleged for the purposes of this case the following: On March 22, 1949, Elvira Trevisonno, the mother of the appellant, caused to be executed a deed in fee simple conveying the real estate at 207 South Exeter Street in Baltimore to Elvira Trevisonno for and during the term of her natural life, with full power and authority unto the said Elvira Trevisonno at any time or times during her said lifetime to sell, lease, mortgage, convey or otherwise dispose of the same or any part thereof (said power to extend to the sale, lease, mortgage, conveyance or other disposition of the remainder or remainders as well as of her life estate therein), and from and immediately after the death of the said Elvira Trevisonno as to so much thereof as shall not have been disposed of in the execution of the aforesaid power unto Theresa Willoughby and Viola Trevisonno as joint tenants and not as tenants in common, their assigns, the survivor of them and the survivor's heirs and assigns forever in fee simple, subject to the condition that the said remaindermen pay the sum of $500.00 upon a sale of the property unto Anna Mary Lazarowicz, another daughter of the said life tenant. After the execution of said deed the said Elvira Trevisonno, sixty-four years of age at the time of the filing of the bill, suffered a cerebral hemorrhage, resulting in complete paralysis of the upper and lower extremities on the right side, which impaired her ability to articulate. The said Elvira Trevisonno is unable to read, write or understand the English language, and is now, and has been since said stroke, incapable of managing her own affairs. After said stroke Elvira Trevisonno was removed from her home at 207 South Exeter Street where she had lived with the appellant and has since resided at the home of Anna Mary and Sylvester T. Lazarowicz, her husband, together with the said Viola Trevisonno, where the said Elvira Trevisonno is receiving medical attention. Due to her financial circumstances the appellant has been unable to contribute to the support of

her mother, but on the contrary, her mother has always cared for, protected and interceded for the appellant. Although the appellant has made numerous attempts to visit her mother, both individually and through her counsel, the said Sylvester T. and Anna Mary Lazarowicz have displayed toward the appellant a bitter and relentless animosity and have refused and do refuse to allow the appellant to visit her mother. On or about the 19th day of April, 1952, the appellant filed a petition in inquire into the competency of the said Elvira Trevisonno, which proceeding is still pending. On or about May 9, 1952, the said Viola Trevisonno, Anna Mary Lazarowicz and Dora Mirabele, another sister of the appellant, filed an answer in said proceedings denying that Elvira Trevisonno was of unsound mind but alleging that she was incapable of managing her affairs. As a result, Benjamin L. Berman, Esquire, was appointed trustee of the estate of Elvira Trevisonno with powers to manage her affairs. On subsequent petition of said trustee, alleging that the court was without power to appoint him as such trustee without the direct consent of the said Elvira Trevisonno, the court passed an order rescinding the previous order appointing said trustee. Several days after the passage of this rescinding order a deed dated August 26, 1952, was recorded among the land records of Baltimore City purportedly executed by the said Elvira Trevisonno by her "X" mark conveying said Exeter Street property to William Hoffenberg in fee simple. Immediately following said deed was recorded a deed from the said William Hoffenberg reconveying the said property unto Elvira Trevisonno for her life with full power of disposition during her lifetime with remainder unto the said Viola Trevisonno alone. After the recording of said deeds there appeared upon the land records of Baltimore City a deed dated September 23, 1952, purportedly executed by the said Elvira Trevisonno by her "X" mark conveying the said property to William Hoffenberg in fee simple. Immediately following this deed was a deed from the said William Hoffen-

berg reconveying said property unto Viola Trevisonno in fee simple and absolutely. All of the said deeds, except that first executed on March 22, 1949, "were procured from the said Elvira Trevisonno, an alleged incompetent, by the exercise of undue influence over her by reason of her infirm condition, weakened mind, her inability to talk, and her complete dependence upon the continued good-will and the care provided by the said Viola Trevisonno, Anna Mary Lazarowicz and Sylvester T. Lazarowicz. That said deeds were procured with the intent to deliberately harass your complainant, to evict her from said property, and to sell or rent said property and divert the income or purchase price therefrom to their own use and benefit." Said deeds will divest the said Elvira Trevisonno of all her interest in said property which constitutes substantially all of her estate and will divest her of all control of its disposition, use and profits and income therefrom. Said deeds, if allowed to stand, will divest the appellant of any and all interest and estate which she may have, either vested or in expectancy in said property, and will result in her immediate eviction therefrom, all contrary to the true wishes of her mother, Elvira Trevisonno, as indicated by her actions toward the appellant at the time when she was in full possession of her faculties.

The bill prayed that all the deeds except that dated March 22, 1949, aforesaid, be declared null and void and that Viola Trevisonno be restrained and enjoined from mortgaging, selling, leasing or in any other manner disposing of the Exeter Street property or proceeding in any action at law to evict the appellant from said premises pending the conclusion of these proceedings. There was also a prayer for other and further relief.

On October 16, 1952, a demurrer was filed to this bill of complaint alleging that the appellant had not stated such a case in said bill to entitle her to any relief; that said action is not maintainable by appellant; that the allegations of said bill with respect to undue influence and the mental incapacity of Elvira Trevisonno are

vague, uncertain, and indefinite. After hearing before the chancellor an order was passed on November 14th, 1952, sustaining the demurrer with leave to the appellant to amend. Appellant, having waived her right to amend and having elected to stand on her bill of complaint, the chancellor on November 20th, 1952, by decree dismissed the said bill. From that decree the appellant appeals. Of course, for the purposes of the demurrer all the well pleaded matters are considered as true.

The appellees contend that the appellant does not have such an interest in the property as entitles her to bring this action.

In *Riley v. Carter,* 76 Md. 581, 25 A. 667, 19 L. R. A. 489, relied on by the appellees, a bill of complaint was filed on behalf of creditors for the purpose of setting aside two deeds by John Nicholson on the ground that they were void against creditors. The appellees quote the following from that case in their brief: "If the lunatic be alive, and have no guardian, no one then but the lunatic himself is entitled to take action, and he is the one most unlikely to do so. It is only after death that the privies in blood or estate can exercise this right." However, immediately after that quotation, this Court said the following: "We think reason and justice alike demand that under such circumstances the creditors, unless restrained by the provisions of the insolvent laws, are entitled to proceed by appropriate remedy for the protection of their rights. It is not the policy recognized by the courts of the present day to limit the right of inquiry; to the contrary, they seek to give practical application to the maxim, *'ubi jus ibi remedium.'* Chief Justice Holt in *Ashby v. White,* 2 Ld. Raym. 952, observes that when a man has a right, he must have a means to vindicate, and maintain it, and a remedy, if he is injured in the exercise and enjoyment of it."

The appellees also rely strongly on the case of *Sellman v. Sellman,* 63 Md. 520. There Joshua Sellman, who was alleged to be a very old and infirm man and clearly under the control and undue influence of his comparatively

young second wife, not the mother of his children, executed two deeds. His children and grand-children filed a bill, during Joshua's lifetime, for the purposes of declaring said deeds void as having been procured from Joshua Sellman by fraud and undue influence. This Court sustained a demurrer dismissing the bill and pointed out that it was a fundamental principle of equity that to entitle a party to sustain a bill he must show an interest in the subject of the suit, and the children and grand-children of the living ancestor could not claim a right to maintain a suit in respect to the property of that ancestor while their interest in such property was merely an expectancy depending upon a future inheritance that possibly may never occur. No one is entitled to be recognized as an heir until the death of the ancestor or the person from whom the property may descend and the fact that such ancestor or other person may be alleged to be a *non compos mentis* or otherwise incapable of managing his estate makes no exception to this general principle. The Court there pointed out that it is only after the death of the ancestor that his children are entitled to the status of heirs which would enable them to assert a right of property derived through him by inheritance. As heirs apparent they have no such right.

The appellant here is not claiming as heir apparent merely on the possibility of a future inheritance that possibly may never occur. She is claiming under a property right accruing to her from a deed executed by the grantor. She is a party by reason of a future estate in the property subject to a power. It was said in *Roberts v. Roberts*, 102 Md. 131, 147, 62 A. 161, 162, 1 L. R. A., N. S., 782: "It is equally clear that the clause in the will last quoted does not of itself make these remainders contingent. The testator, having given his widow a power of disposition, naturally and properly spoke of his estate 'remaining at the death of my said wife,' but that would not convert what would otherwise have been a *vested* into a *contingent* remainder. The remainder may vest subject to the power, and the uncertainty as

to whether the power will be exercised as to all or part of the estate does not make it a contingent remainder." Whether appellant's interest in the property is a vested remainder with a possibility of being divested, or whether it is a contingent remainder seems to make no difference in her right to be a party to this case. Under the annotation "Right of owner of contingent or defeasible future interest to maintain action for relief in respect of property" it is said in 144 A. L. R. at page 781: "Although, at least in the past, the door to remedies of a legal nature has been practically closed to holders of contingent or defeasible future interests, equity, which will not suffer a wrong to be without a remedy, is a familiar source of relief for persons whose future interests in property, rising above bare expectancies, are reasonably substantial, though contingent or defeasible, as in the case of many contingent remainders. The principal theme of such relief is protection, * * *." In *In re Clayton's Estate*, 195 Md. 622, 625, 74 A. 2d 1, 2, decided June 15, 1950, it is said: "Although the common law doctrine that a contingent remainder is a mere possibility, and is not assignable, has not in Maryland, as it has in England and many states, been changed by statute, it has long been settled that a remainder, contingent only as to the event and not as to the person to take, is descendible, devisable and assignable. In *re Banks' Will*, 87 Md. 425, 40 A. 268; *Reilly v. Mackenzie*, 151 Md. 216, 134 A. 502, 48 A. L. R. 778." In *Ford v. Hurt*, 127 Tenn. 557, 155 S. W. 927, it was held that a contingent remainderman could sue to set aside a tax title. In *Bowe v. Richmond*, 33 Ky. Law Rep. 173, 109 S. W. 359, it was held that although the remaindermen could not have possession of the property until the death of the life tenant, in view of the adverse claims set up by the appellees then in possession of the land, they had the right to maintain the action to obtain an adjudication of their rights, and have determined what interest they had in the land. See also *Degenkolv v. Daube*, 143 Pa. Super. 579, 18 A. 2d 464; *Ballinger v. Bartolett*, 127 A. 671, 3

N. J. Misc. 80. We are not unmindful of the rule in Maryland that "those only who have a clear legal and equitable title to land, connected with possession, have any right to claim the interference of a Court of Equity to give them peace or dissipate a cloud on title". *Polk v. Pendleton,* 31 Md. 118, 124; *Helden v. Hellen,* 80 Md. 616, 620, 31 A. 506; *Keys v. Forrest,* 90 Md. 132, 135, 45 A. 22; *Rosenthal v. Donnelly,* 126 Md. 147, 154, 94 A. 1030. Compare *Simes on Law of Future Interests,* Vol. 3, Section 651, pages 58 and 59. However, there are some recognized exceptions to this rule, one of which is where fraud is charged. *Robinson v. Marino,* 145 Md. 301, 309, 125 A. 701, 36 A. L. R. 692. Under the prayer for other and further relief this bill may be considered as one to obtain a declaratory decree. *In re Clarke's Will,* 198 Md. 266, 272-274, 81 A. 2d 640, 643 and cases there cited; *Borchard, Declaratory Judgments,* page 422. We must therefore conclude that the appellant has sufficient interest to maintain this action. Compare *Lee v. Keech,* 151 Md. 34, 133 A. 835, 46 A. L. R. 1488.

The appellees further contend that the allegations of said bill with respect to undue influence and the mental incapacity of Elvira Trevisonno are vague, uncertain and indefinite. Of course, the mere charge of fraud or undue influence, unless supported by facts which justify it, will not be recognized as sufficient to invoke the jurisdiction of an equity court. "It may be stated as a general rule that a mere charge of fraud or undue influence unsupported by any facts which justify it will not be recognized in a court of equity as sufficient to invoke its jurisdiction. On the other hand, while it is necessary to set out such facts as will support the inference of fraud, it is sufficient if they be stated as facts, unaccompanied by the evidence by which they may be established." *Upman v. Thomey,* 145 Md. 347, 125 A. 860, 863. In that case, Margaret Thomey before her death executed a deed conveying to one of her sons, Edward, a tract of land subject to a life estate in her.

After the death of Margaret, other children, who were residuary legatees and heirs at law of Margaret, filed a bill of complaint against Edward for the purpose of setting aside the conveyance to him. A demurrer was filed to that bill and this Court in affirming the action of the chancellor in overruling the demurrer said: "* * * it will be seen that the facts from which the charge of fraud is inferred are stated with the most meticulous particularity. The specific fraud charged is that a son, who stood in a technical position of confidential relationship to his mother, who was wholly illiterate, and so enfeebled in mind and body that she was unable to comprehend the meaning of the transaction, and over whom he exercised a dominating control, dominion and influence, procured her to execute a deed in which she conveyed to him, for no consideration, valuable real estate, which she had in a will executed years before left to all her children equally. That the facts are sufficient to justify the inference that the son did stand in a confidential relationship to his mother there can be no reasonable doubt. * * * If the facts referred to are sufficient to show that in this case the grantee stood in a position of confidential relationship to his mother, and in our opinion they are sufficient for that purpose, then the burden was case upon the grantee to show that the transaction was a fair and proper one, and that the deed was the deliberate and voluntary act of the grantor. *Bentley v. Bentley,* 141 Md. 437 [119 A. 293]; *Chase v. Grey,* 134 Md. 625 [107 A. 537]. And it is not necessary for the complainants to allege or to prove actual fraud or the actual exercise of undue influence in order to set the deed aside. *Highberger v. Stiffler,* 21 Md. 350; *Todd v. Grove,* 33 Md. 188. Without prolonging the discussion of this branch of the case it is sufficient to say that in our opinion the facts stated in the bill, if true, do present a case for equitable relief."

In *Gaggers v. Gibson,* 180 Md. 609, 26 A. 2d 395, 397, a man 86 years of age and very feeble and not capable

of serious mental effort, executed a deed to Will Gaggers, his son-in-law, at the instance of Gagger's wife, the daughter of Gibson, who had assumed control of her father's affairs. This Court in sustaining the action of the chancellor in setting aside that deed said: "While it is true the deed is to Gaggers alone, it was procured by his wife, and he is bound by her actions. 'It is firmly established as the law of this State that where an aged parent makes a conveyance to a child, the burden is cast upon the grantee of establishing the fairness of the transaction. And, if where confidence is reposed it is abused, courts of equity will grant relief.' *Beinbrink v. Fox*, 121 Md. 102, 104, 88 A. 106; *Bentley v. Bentley*, 141 Md. 428, 437, 119 A. 293; *Chase v. Grey*, 134 Md. 619, 625, 107 A. 537. Actual fraud, or undue influence, is not necessary in order to vacate the deed. *Highberger v. Stiffler*, 21 Md. 338, 350, 83 Am. Dec. 593; *Todd v. Grove*, 33 Md. 188. Advanced age, physical debility and mental feebleness are all facts carrying weight in determining whether a confidential relation in fact existed. *Mead v. Gilbert*, 170 Md. 592, 185 A. 668; *Gerson v. Gerson*, 179 Md. 171, 20 A. 2d 567."

In *Henkel v. Alexander*, 198 Md. 311, 83 A. 2d 866, decided October 31, 1951, Zimmers, then 80 years of age, conveyed property to a straw man, who in turn conveyed it to Miss Henkel, a niece of his deceased wife. He was later declared incompetent and the committee appointed for him filed a bill to set aside the deed. This Court in sustaining the chancellor in granting the relief prayed said the following: "This testimony does not justify the conclusion that there was undue influence exercised upon Zimmers, but it is not denied by the appellant, and this lack of contradiction must be taken into consideration when we determine whether the transaction was fair and reasonable. Miss Henkel was in possession of more knowledge about Zimmers' affairs than anyone else. She was looking after him, and she got the lawyer who was to draw the deeds. We think

she was in a confidential relation to him and this places upon her the duty of showing that the conveyances were fair under all the circumstances. We do not think she has met that burden. There is no consideration for the deeds, they constitute a pure gift, and Zimmers thereby stripped himself of half of all he had to care for him in his old age. We cannot hold such a transaction to be fair and reasonable." See also *Vocci v. Ambrosetti*, 201 Md. 475, 94 A. 2d 437. Compare *Hancock v. Savings Bank of Baltimore*, 199 Md. 163, 85 A. 2d 770.

Here, the appellant by the deed of March 22nd, 1949, received an interest in the property, subject to being divested by the grantor. Later, according to the allegation of the bill, when approximately 64 years of age the grantor suffered a cerebral hemorrhage resulting in severe physical handicaps and which have impaired her ability to articulate. She was unable to read, write or understand the English language and incapable of managing her own affairs. She has been removed from her home to the home of one of her daughters, an appellee here. After this time the deeds in question were executed. The appellant has been prevented from seeing her mother since this removal although she had made strenuous efforts to see her. The appellees have admitted that the grantor is incapable of managing her affairs. Under the present conveyances, the grantor has stripped herself of all her property and the appellant of all her interest therein. The later deeds were made with intent to evict the appellant from the property and for the purpose of diverting the income or purchase price therefrom to the use and benefit of Viola Trevisonno, Anna Mary Lazarowicz and Sylvester T. Lazarowicz, who stood in a confidential relationship to the grantor.

It is contended that the appellant should have waited until the death of her mother to bring this action. However, it is quite possible that before the death of the grantor the property in question may be conveyed to an innocent purchaser for value. We are of opinion that

the demurrer should have been overruled and the appellant allowed, if possible, to prove the facts alleged in her bill.

*Decree reversed, with costs, and cause remanded for further proceedings.*