## TALLEY *v.* DEPARTMENT OF CORRECTION ET AL.

[No. 34, September Term, 1962.]

*Decided November 7, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, MARBURY and SYBERT, JJ.

*Maurice J. Pressman,* with whom was *Bernard Brager* on the brief, for appellant.

*Charles R. Goldsborough, Jr., Special Attorney,* with whom were *Thomas B. Finan, Attorney General, J. Howard Holzer, Special Assistant Attorney General,* and *J. Raymond Buffington, Jr., Special Attorney,* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

An inmate at the Maryland House of Correction, claiming to have sustained accidental injuries to his lower back, and having had his claims disallowed by the Workmen's Compensation Commission (Commission) and, on appeal, by the Baltimore City Court, now appeals here.

Two questions are posed for determination: (1) Did the claimant sustain accidental personal injuries arising out of and in the course of his employment on November 30, 1960, and/or on December 16, 1960?; and (2) is the disability of the claimant the result of an accidental personal injury arising out of and in the course of his employment?

The facts will be stated in the consideration of question one.

I

The Commission and trial court both found that the claimant had failed to establish that he suffered an accidental injury either on November 30th, or December 16th. The statute makes the finding of the Commission *prima facie* correct, and the appellant realizes that he had the burden, at his trial below, of showing that he suffered an accidental injury arising out of and in the course of his employment. The claimant related how, on November 30th, the truck in which he was riding back to the Sandy Point road camp for prisoners had been brought to a sudden stop, and he fell from a crate upon which he had been seated, hurting his back. He testified that the alleged injury did not cause him to cease work, nor to obtain medical treatment. His supervisor, who was operating the "panel truck," stated that the claimant made no complaint to him, and he had no knowledge of any injury to the appellant; that the truck had no partition in it; and, if the claimant had been injured, he certainly thought that he (the supervisor) would have known it. The claimant did not file his claim for this alleged injury until March 6, 1961, which was sometime after his filing a claim, on January 23, 1961, for another alleged injury occuring on December 16, 1960. And there was no evidence produced in the entire record, except that of the claimant, that affirmatively showed any traumatic injury to him as of November 30th, or that any previous illness or condition had been

aggravated by the alleged injury. In any event, we take it that the appellant abandoned his claim for alleged injuries occurring as of this date, when he said in his brief: "Appellant did not seek medical care following the accident on November 30, 1960. He testified that the pain was slight and not enough to bother him or cause him to stop working. The accident which disabled him was the occurrence of December 16, 1960." We, therefore, proceed to a consideration of his claim for injuries as of that date.

At the hearing before the Commission on May 1, 1961, only two witnesses were produced: the claimant and his supervisor on November 30th. The latter was vacationing on December 16th, and knew nothing concerning the appellant's claim as of that date. The evidence before the Commission consisted of the testimony of these two witnesses and the reports of four doctors. The Commission found against the claimant, and, upon appeal, the case was submitted to the lower court for trial upon the record made before the Commission.

The appellant testified that on December 16th, while removing snow from the walkway in the "Court of Appeals yard," at about 10:30 a.m., his "his left foot give away" and he fell, twisting his back. He stated that he was 38 years old;[1] that he told his supervisor, a Mr. Greenwood, about his "accident" shortly after it occurred; that he continued work until 4:00 p.m. on that date; but that he did not go to work the next day because of the pain in his back. He further stated he reported the "trouble with [his] back" on December 19th, and requested hospitalization. He entered the hospital (and remained there for a month and five days), where they "put a bed board under [his] bed," administered him pills for his pain, and later "gave [him] diathermy." He further stated that he was released from the House of Correction on February 16, 1961; that he had received no further treatment for his back since then; that he was still having trouble "bending over" and sleeping; and that he had never had any trouble with his back prior to the "accidents." The testimony disclosed that Mr.

---

1. The appellant's age is stated in his brief to be 30 years; in Dr. Weiner's report as 32; in the report of Dr. Maseritz as 36; and appellant testified he was 38 years old.

Greenwood was still employed at the Sandy Point road camp, but he was not called by either side.

When the claimant was admitted to the hospital at the House of Correction on December 19th, he was examined by Dr. Yosuico. The doctor's report, summarized, stated that the appellant reported an "accident" in the truck, and another "when [he] was moving snow in Annapolis [his] back hurt"; that there was "tenderness over the lumbar spines, lower," that the treatment given by the doctor was "parafon ii quid. bed board diathermy qd."; and that an X-Ray showed nothing abnormal in the lumbar spines. Further, in response to the printed question, "Is injury above referred to the only cause of patient's condition?" the doctor answered "yes," and he also reported that there was no history or evidence of a previous accident or disease.

At the request of his counsel, the appellant was examined by Dr. Maseritz on February 20, 1961. The doctor's report is quite long, and indicates a rather thorough examination. It would serve no useful purpose to set it forth in full; with the exceptions noted below, it describes a healthy, normal individual. The patient reported pain in the low back, recurring in character, but not referred to the extremities and with no history of sensory changes. His body tilted to the left; there was no rigidity of the cervical or thoracic areas of the spine and no tender points; but pain was elicited on percussion; there was pain "to the right" but not "to the left" which was compatible with the rigidity noted; and the right ankle reflex was diminished. An X-Ray examination of the lumbar spine and a portion of the lower dorsal showed hyperthopic arthritic changes, short rib at D-12 and narrowing between L-4, L-5 and L-5, S-1. The doctor thought a neurosurgical consultation was indicated, and the appellant was referred to Dr. Weiner for that purpose.

Dr. Weiner saw the claimant on February 21, 1961. He reported that appellant was a man below average intelligence and the history was given "very slowly and hesitantly and [impressed the doctor] as being of some questionable accuracy." The patient reported the "accidents" above noted, and stated that his pain was then limited to the low back, and "on re-

peated questioning" he denied any significant leg pain. The doctor found the appellant to be a stocky, muscular negro male, who was fully conscious. He stood with his spine in forward flexion, and was extremely reluctant to move or bend in any direction. The paravertebral lumbar muscles were somewhat tight, but the doctor did not believe that this was a true spasm. There was extreme, generalized tenderness over the entire lumbar spine, the paralumbar muscles and the sacrum, much of which, to the doctor, seemed to be hyperreaction. Straight leg raising was positive bilaterally at about 75 degrees; appellant's gait and balance were normal; there was no muscular weakness or atrophy; the deep tendon reflexes in the lower extremities were active and symmetrical; no pathological reflexes were present; and sensory examinations to superficial pain, touch, vibration and position sense were within normal limits. The doctor stated that there was no convincing evidence of nerve root compression; therefore he suggested no further neurodiagnostic studies at that time. The doctor thought it was possible, however, that the claimant's condition could represent early disc degenerative disease, and should he develop radicular symptoms, the doctor would be interested in re-evaluating him.

Dr. Maseritz saw the appellant again on March 9, 1961. His report of this examination was short: "The patient's symptoms persist"; the examination "shows a rather mixed picture at this time"; his first examination was suggestive of nerve root irritation, but, like Dr. Weiner, he was of the opinion that there was "no convincing evidence of these changes"; however, it was possible that nerve root irritation did exist as a result of disc protrusion and that the condition was in a state of remission; the doctor made no recommendations at that time, but suggested that the patient return, should there be an increase in the extent of his symptoms; and the doctor estimated disability amounting to 15% loss of the use of the patient's spine.

The other doctor's report was that of Dr. Stewart, who merely stated that, as of April 24, 1961, the claimant was "not ready for rating."

It is significant to note that, with the exception of the claimant's testimony (and the possible exception of two of the answers of Dr. Yosuico to printed form questions), there is no affirmative evidence of any traumatic injury having been suffered by the appellant on December 16th.

The main thrust of appellant's argument is that he stated that he never had any previous difficulty with his back before the "accident" that he said occurred on December 16th, and, since no witness "contradicted" his testimony, it was binding upon the trial court. He cites such cases as *Moller Motor Car Co. v. Unger*, 166 Md. 198, 170 A. 777, and *Baber v. Knipp & Son*, 164 Md. 55, 163 A. 862, and states "medical testimony is not essential, where by other evidence causal connection may fairly and logically be shown." The cases cited merely held that the evidence adduced therein entitled the claimants to have their cases submitted to juries; not that the claimants had established their claims as a matter of law. In the instant case, the trial court considered the appellant's evidence as a trier of facts, and, with the burden of persuasion being on the claimant, held that "on the record submitted to the court, that the claimant has failed to establish that he sustained an accidental personal injury arising out of and during the course of his employment * * * on or about * * * December 16, 1960." (This was not necessarily a finding that the claimant did not slip and fall on December 16th. It was, however, a finding that if he did, he failed to meet the additional burden of showing a personal injury resulting therefrom.)

It is true that where the facts are conceded, undisputed, or uncontroverted, and the inferences to be drawn therefrom are plain, definite and undisputed (which is not the case here, the issue being considered controverts an accidental personal injury to the claimant), their legal significance is a matter of law to be determined by the court,[2] but where the facts, or inferences therefrom, or both, are in dispute, such questions are to

---

2. Harrison v. Central Construction Co., 135 Md. 170, 108 A. 874; Moore v. Clarke, 171 Md. 39, 187 A. 887; Barnes v. Myers, 163 Md. 206, 161 A. 279; Beyer v. Decker, 159 Md. 289, 150 A. 804.

be determined by a jury [3] (or where the case is submitted to the court, by the judge as questions of fact, not of law), and the jury (or the court sitting to determine questions of fact) is entitled to weigh and evaluate the evidence, and may disbelieve evidence, even though it is "uncontradicted." [4]

As stated above, the trial judge, sitting as a trier of facts, found that the claimant had failed to establish that he had sustained an accidental personal injury on December 16th, and we are unable to say that he was in error in reaching this conclusion. In cases of this nature, we do not weigh and evaluate the conflicting evidence to determine its comparative value, but decide only whether there is any evidence legally sufficient, or a lack of evidence where a negative finding is made, to support the finding of the trier of facts; and in making this decision, we assume the truth of all the evidence, and of all favorable inferences fairly deducible therefrom, tending to support the conclusion of the trier of facts. Cf. *Havre De Grace Fireworks Co. v. Howe,* 206 Md. 158, 110 A. 2d 666; *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 117 A. 2d 577. There were many weaknesses and gaps in the claimant's evidence. Among these were: the fact that he, apparently, made no effort to produce his supervisor as of December 16th, to whom the appellant claimed to have reported his alleged accident shortly after it occurred, and who was still employed by the State at the time of his hearing; that his own doctor, Dr. Weiner, expressed doubt as to the "accuracy" of the history given to him by the claimant; that another of his doctors, Dr. Maseritz, reported "hyperthropic arthritic" changes in his spine, and there was no attempt to show their cause, or the symptoms that might be expected to result therefrom; that, although both of the doctors employed by him suggested additional examinations if symptoms should develop offering convincing evidence of nerve

---

3. L. & S. Co. v. State Accident Fund, 221 Md. 51, 155 A. 2d 653.

4. Dunstan v. Bethlehem Steel Co., 187 Md. 571, 51 A. 2d 288; Paul Construction Co. v. Powell, 200 Md. 168, 181, 88 A. 2d 837. Cf. Bethlehem Shipyard v. Scherpenisse, 187 Md. 375, 50 A. 2d 256.

30

root irritàtion, or compression, no such examinations were had; and there was no objective finding by either of the doctors employed by the claimant of any traumatic injury to him. Under these circumstances, we see no need to disturb the conclusion reached by the trial court.

The appellant has cited to us the case of *Jerke v. Delmont State Bank,* 223 N. W. 585 (S.D.). We find it unnecessary to discuss the same, because the decisions of this Court, of recent vintage, fully cover the law of the case.

## II

Having reached the above determination with reference to question one, it becomes unnecessary to discuss question two.

*Judgment affirmed, with costs.*