## TREFFINGER ET AL. *v.* STERLING

[No. 297, September Term, 1972.]

*Decided June 22, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SMITH and DIGGES, JJ.

*Charles C. Hartman, Jr.,* for appellants.

*Robert N. Lucke* for appellee.

DIGGES, J., delivered the opinion of the Court.

To understand the factual background of this appeal, it is necessary to go back to 1967, a date almost four years before this equity action was filed in the Circuit Court for Anne Arundel County. The complainants, appellants here, are the son, Charles, and two daughters, Olga and Rosina, of Charles J. Treffinger, Sr. (Mr. Treffinger), who were ignored by their father when he conveyed his summer shore property on Cypress Creek in Anne Arundel County to their widowed sister Marie, the appellee. Appellants seek to set aside this deed on two grounds: first, that the land was conveyed at a time when their father was mentally incompetent, and, second, that the conveyance resulted from undue influence exercised upon him by Marie.

It seems that in September of 1967, Mr. Treffinger, while vacationing at Cypress Creek, became involved in an altercation with a neighborhood youth, Ricky Smith, which resulted in the child's sustaining a broken arm. A short time thereafter, Ricky's attorney made a demand upon Mr. Treffinger for $500 to settle his young client's claim for the damages resulting from this encounter. Mr. Treffinger denied liability, but instructed his attorney to attempt to settle this claim for $200. When neither side was willing to accept the other's offer, the matter remained dormant until July 31, 1969, when a suit was instituted on behalf of young Ricky claiming $7,500 in damages.

At the onset of the summer of 1969, Mr. Treffinger moved from his home in Baltimore City to his summer residence on Cypress Creek. Marie and her daughter, as was their custom, joined him for the summer at the waterfront residence. The days there were pleasant for this eighty-nine year old gentleman until he received notice of the Smith suit. Then, as he feared that legal action endangered his summer property because he had recently reduced his liquid assets below $7,500 by contracting to repair a bulkhead along his shore line, Mr. Treffinger directed Marie to go to his attorney and secure advice concerning what should be done in regard to the suit. It is uncontradicted in the testimony that Marie acted as requested; and, upon her return informed her father that the lawyer advised that the property be transferred to her in order to insulate it from a possible judgment. Following a discussion between father and daughter, Marie agreed to purchase the property for $7,000 and the transaction was consummated on August 20, 1969. About a month later, she personally paid the cost of the repairs to the bulkhead amounting to $3,586.00, thus relieving her father of that obligation.

Following the death of Mr. Treffinger on November 25, 1969, the appellants as his heirs, claiming that the property had a value of around $21,000, brought this suit in an effort to void the deed to Marie on the grounds that it was procured by her undue influence and that at the time of transfer their father lacked sufficient mental capacity to

execute a valid conveyance. By her answer, Marie denied both of these claims.

In considering the case on the merits, the chancellor made an evidentiary ruling which is one of the subjects of the appeal here. Appellants contend that the chancellor committed prejudicial error when he allowed the following hypothetical question asked of appellee's expert medical witness by her counsel to be answered:

> "Now doctor, assuming that *all of the testimony that you have heard* in this case concerning the decedent Charles J. Treffinger, Sr. is true, and based on your knowledge and skill as a specialist a doctor of medicine specializing in psychiatry, to a reasonable medical certainty, do you have an opinion as to whether or not Charles J. Treffinger, Sr. was competent to execute a deed in August of 1969? (Emphasis added.)

Hypothetical questions may properly be asked in the following ways: one is to state for the witness such facts as are essential to the foundation of an opinion, ask him to assume the truth of the facts so stated, and then render an opinion upon them; the other is to ask the expert to predicate his opinion upon uncontradicted evidence heard or read and assumed to be true. *Kruszewski v. Holz*, 265 Md. 434, 444, 290 A. 2d 534 (1972). The inquiry here was obviously an attempt to utilize the latter technique in posing a hypothetical question. And, although appellants recognize the propriety of such an interrogation, they object to the form of this particular question, using as it does the evidence in this case as its foundation. It is difficult to particularize appellants' vague and overly general argument. However, their objection seems to be grounded on the long line of cases which state that while an expert who has heard the entire testimony at trial and is asked to assume the truth of all that he has heard may base his opinion on *facts* testified to by other witnesses, including experts, if there are no internal inconsistencies; he may not respond if the question is so broad that it calls upon him to take into

360

account, in whole or in part, the opinions, inferences, and conclusions of other witnesses. *Consol. Mech. Contractors v. Ball,* 263 Md. 328, 283 A. 2d 154 (1971); *Mt. Royal Cab Co. v. Dolan,* 168 Md. 633, 179 A. 54 (1935); *Quimby v. Greenhawk,* 166 Md. 335, 171 A. 59 (1934). As appellants have failed to call to our attention any internal factual inconsistencies, and as our careful review of the record does not reveal their presence, we must assume that the objection does not go to this potential problem. Therefore, appellants' opposition to the form of the question must relate to the fact that to give a truthful and complete answer the appellee's medical expert, who had sat through the entire five day trial, must accept as correct and include in his response the prior opinion testimony of appellants' psychiatrist who testified that in his opinion Mr. Treffinger was incompetent at the time of the execution of the deed. We agree that normally it would be reversible error to permit a response to a hypothetical question which embraces the opinions of others. *Consol. Mech. Contractors v. Ball, supra.* However, it is clear that appellee's expert did not include as a fact to be considered the other psychiatrist's opinion since he expressly rejected it and reached a diametrically opposed conclusion. In fact, a major part of his testimony was devoted to refuting the medical diagnosis and judgments of the other doctor. Under these circumstances, we think that any defects which existed in the hypothetical question itself were rendered harmless by the witness's obvious refutation and disregard of the prior opinion testimony; and, any error which was made by the chancellor in permitting this opinion to be expressed was harmless and does not compel reversal. *See Woljinger v. Frey,* 223 Md. 184, 162 A. 2d 745 (1960); *Gordon v. Opalecky,* 152 Md. 536, 137 A. 299 (1927).

We proceed, therefore, to the substantive issue in this appeal, namely, whether the trial court was correct in concluding that Mr. Treffinger was not improperly induced by Marie to convey the shore property to her. We begin by stating that it is the law of Maryland that where no confidential relationship is proven, the burden of demonstrating undue influence remains on the party

asserting it. And, to meet this burden that party must bring forth proof of coercion or that degree of influence which renders him too impotent to resist, thus depriving him as a grantor of his free agency to such an extent that the execution of the deed is not his voluntary and unconstrained act. *Akin v. Evans, Exec.*, 221 Md. 125, 156 A. 2d 219 (1959). It is also clearly established that undue influence may arise from the breach of a confidential relationship existing between a grantor and his grantee. But, there is no presumption of such a relationship in the case of a transfer from a parent to a child and the burden of demonstrating that one exists is on the party alleging it. *Akin v. Evans, Exec., supra.* Among the factors to be examined in determining whether this relationship has come into being are the parent's advanced age, his physical debility, his mental feebleness, and his dependence on his child. None of these factors is necessarily conclusive and each should be given that weight which is warranted by the circumstances then present. *Masius v. Wilson*, 213 Md. 259, 131 A. 2d 484 (1957); *Tribull v. Tribull*, 208 Md. 490, 119 A. 2d 399 (1956). Normally it is the minor child who relies heavily upon his parent for care and protection or for guidance in business affairs so that a confidential relationship exists between them with the duties running from the adult to the minor. It is only when, as a result of debility or feebleness, a parent becomes dependent on his child for aid and counsel, that a confidential relationship is re-established but with the duties reversed in the latter case and with the burden of establishing the fairness of the transaction cast upon the child. *Tribull v. Tribull, supra; Williams v. Robinson*, 183 Md. 117, 36 A. 2d 547 (1944); *Gaggers v. Gibson*, 180 Md. 609, 26 A. 2d 395 (1942).

It is evident from the case law cited that if the appellants are to rely on the existence of a confidential relationship between Marie and her father they have the burden of demonstrating it. The chancellor found that this burden was not met and from the record before us we cannot say that Judge Beardmore was clearly in error in reaching that conclusion. Maryland Rule 886. The proof presented by the

appellants in their effort to demonstrate the existence of a confidential relationship is, at best, inconclusive. The record portrays Mr. Treffinger as a very old man whose mobility was somewhat limited due in part to his advanced age and in part to an accident that had occurred several years before. However, throughout most of the year he lived alone in Baltimore and Marie only joined her father at the shore for their mutual vacation enjoyment, not because of any need for custodial care. As a considerate daughter should, Marie ran errands for her father in an effort to repay him for his kindness in allowing her and her daughter to vacation at Cypress Creek. And she was motivated more out of a desire to make Mr. Treffinger's life more comfortable rather than out of necessity to fulfill his needs. The assistance she rendered was always at her father's direction. In a sense, she served merely as his messenger, as his arms and legs. The record is clear, and the chancellor so found, that Mr. Treffinger did not in any way depend on Marie for financial support as he received a monthly pension. In fact, he paid the bills. While it is true that on occasion she made bank deposits, withdrawals and signed checks for him, all of this was accomplished at his specific direction and was not occasioned by any influence on her part. Mr. Treffinger's independence was manifested by the fact that, when faced with the crisis precipitated by the Ricky Smith suit, he instructed Marie to go to his attorney for advice rather than seeking guidance and direction from his daughter. Neither the legal consultation nor the actual transfer was Marie's idea. Mr. Treffinger's confidence was placed in the advice of his attorney — not Marie's.

This suit is unlike those cases such as *Gaggers v. Gibson, supra*, in which this Court found a confidential relationship to exist between an adult daughter and her father. In *Gibson* the father was eighty-six years old, enfeebled for more than a year, did not appear capable of serious mental thought, and was constantly pressured by his daughter who had assumed control over his affairs to transfer his property to her husband. The facts found by the chancellor here are unlike those in that case. Testimony by disinterested parties

demonstrated that Mr. Treffinger could carry on a coherent conversation, conduct his own business, and was independent in reaching important decisions. In fact, the only evidence which would in any way demonstrate that a confidential relationship might exist in this case would be Mr. Treffinger's extreme old age. But, as we said in *Henkel v. Alexander*, 198 Md. 311, 83 A. 2d 866 (1951) that is not enough. This Court has frequently found no confidential relationship to exist between an elderly parent and his adult child. *See, e.g., Masius v. Wilson, supra* at 264 and the cases cited therein. This case presents just one more example.

With a finding that there was no confidential relationship between Marie and her father, the burden was placed upon the appellants to demonstrate that the conveyance of the shore property from father to daughter was procured by undue or other improper influences. Judge Beardmore decided that this burden was not met and again we cannot say he was clearly in error in ruling as he did. In fact, there was little or no evidence in the record which would indicate that Marie exercised any force or coercion in acquiring the deed to the Cypress Creek property. Rather, the evidence shows it was the fear of a large judgment which could not be satisfied by his cash on hand, coupled with his lawyer's advice that he transfer the property, which brought about Mr. Treffinger's decision to convey his shore home to Marie.

Under the views we have just expressed concerning the merits of this controversy, it becomes unnecessary to decide the remaining issue raised on this appeal.

> *Decree affirmed.*
> *Costs to be paid by the appellants.*